UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEBRA LYNN WILLIAMS,
    Plaintiff,

v.                                          Case No. 2:15-CV-152
                                             TIMOTHY P. GREELEY

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,
    Defendant.
_____/

## OPINION & ORDER

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on June 5, 2012, as well as an application for supplemental security income on May 31, 2012.  PageID.32.  In both applications, Plaintiff alleges that she became disabled on February 1, 2010, due to leg, muscle, and arm pain, as well as migraines.  PageID.32, 91.  On August 9, 2012, these claims were denied, and upon reconsideration on May 7, 2013.  PageID.32.  On May 10, 2013, Plaintiff filed a written request for an administrative hearing before an Administrative Law Judge (ALJ).  PageID.32. The ALJ held a video hearing on April 24, 2014.  PageID.32.  At the hearing, Plaintiff was represented by counsel.  PageID.32.  Testifying at the hearing were Plaintiff and vocational expert Mark A. McGowan.  PageID.32. In a decision issued on August 25, 2014, the ALJ denied Plaintiff's claim for benefits.  PageID.32-54. Plaintiff filed this action on October 27, 2015.[1]  ECF No. 1.

Plaintiff suffers from leg pains, muscle spasms, right arm pain, arthritis, and migraines.  PageID.91.  Plaintiff testified that she used to work as a dishwasher.  PageID.87, 90-91.  In addition, she stated that she has a ninth grade education, and that she has not attempted to

---

[1] Both parties have consented to proceed before a magistrate judge.  ECF No. 9.

get her GED.  PageID.82-83.  Plaintiff said she can drive about an hour each day, walk two blocks at a time, do the dishes, vacuum, do the laundry, lift ten to fifteen pounds, sit for thirty minutes to an hour, and care for and walk a dog. PageID.94-98, 104.

Vocational expert Mark A. McGowan testified at the hearing and was asked to evaluate Plaintiff's ability to perform her past relevant work based on a few hypotheticals. PageID.110-112.  The first hypothetical asked if a person of Plaintiff's age, education, and past relevant work experience that had the following limitations would be able to perform her past work as a dishwasher: sedentary work; lift and carry ten pounds occasionally, less than ten pounds frequently; stand and/or walk for two hours out of an eight hour workday; frequently reach in all directions, including overhead; frequently handle and finger without limitation; never work in the presence of unprotected heights or hazardous machinery; limited to performing simple, routine tasks, use judgment consistent with that type of work, and deal with changes in their work setting consistent with that type of work.  PageID.110.  Mr. McGowan noted that this person could not perform Plaintiff's past work as a dishwasher.  PageID.111.  However, this person could perform work as a telephone solicitor (125,000 jobs nationally), an escort vehicle driver (50,000 jobs nationally), and a color photograph printer operator (38,000 jobs nationally). PageID.111-112.

Plaintiff's attorney then asked Mr. McGowan if a person of Plaintiff's age, education, and work history would be able to work at any skill level if she had to be off task more than ten percent of the day.  PageID.121-122.  Mr. McGowan indicated no jobs would be available for this person.  PageID.122.  Plaintiff's attorney then asked whether a person of Plaintiff's age, education, and work history would have any jobs available to her at any skill level

with the following conditions: occasionally not have to concentrate; and perform simple, routine, and repetitive work-related tasks. PageID.122. Mr. McGowan stated that this person would not be able to perform Plaintiff's past work as a dishwasher, nor the jobs outlined in the ALJ's first hypothetical. PageID.122. Plaintiff's attorney then asked if a person of Plaintiff's age, education, and work history would have any jobs available to her if she was limited to sedentary, unskilled work, and would need to sit for thirty minutes, or stand for thirty minutes, or lay down for one to two hours at a time. PageID.123. Mr. McGowan stated that this person could not perform any relevant work. PageID.124. In the next hypothetical, Plaintiff's attorney asked whether someone in Plaintiff's position that was limited to sedentary work and the following limitations would have any jobs available to her: occasional reaching, grasping and fingering; occasional bending, stooping, kneeling, doing stairs and ramps; never using ladders or scaffolds, never being on unprotected heights, and never moving machinery. PageID.124. Mr. McGowan testified that this person would not be able to perform relevant work. PageID.124-125.

   The ALJ determined that Plaintiff suffers from degenerative disc disease of the cervical spine at C4-C5, C5-C6, and C6-C7; acromioclavicular joint arthritis with subacromial impingement and supraspinatus tendon tear, status post arthroscopic repair in 2007; a mental impairment variously diagnosed to include anxiety disorder, NOS, and borderline intellectual functioning; and obesity with a weight of 258 pounds on a 5' 6" frame, for a body mass index of 42. PageID.35. Based on these conditions and the ALJ's determination of Plaintiff's physical capabilities, the ALJ concluded that Plaintiff could perform work as a telephone solicitor, escort vehicle driver, and a computer controlled color printer operator. PageID.52-53.

   Plaintiff filed an appeal on October 27, 2015 (ECF No. 1), alleging that the ALJ's

decision to deny social security benefits to Plaintiff was improper.  ECF No. 10.  Defendant Commissioner of Social Security filed a response on February 29, 2016.  ECF No. 11.  Plaintiff filed a reply on April 4, 2016.  ECF No. 12.  The matter is now ready for a decision.

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g).  The findings of the ALJ are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion).  This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently.  *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is

under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R. § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.*

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 1, 2010, the alleged onset date. PageID.35. At step two, the ALJ determined Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine at C4-C5, C5-C6, and C6-C7; acromioclavicular joint arthritis with subacromial impingement and supraspinatus tendon tear, status post arthroscopic repair in 2007; a mental impairment variously diagnosed to include anxiety disorder, NOS, and borderline intellectual functioning; and obesity. PageID.35. At step three, the ALJ determined Plaintiff's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. PageID.35-39. At step four, the ALJ determined Plaintiff has the residual functional capacity (RFC) to perform sedentary work, as defined in 20 C.F.R.§ 404.1567(a) (PageID.52-53), with the additional limitations of: lift and carry 10 pounds occasionally and lift and carry less than 10 pounds frequently; stand and/or walk no more than 2 hours out of an 8 hour workday; sit 6 hours out of an 8 hour workday; no more than frequently reach in all directions including overhead, frequently handle bilaterally, and frequently finger bilaterally; no limitations on feeling; never work in the presence of unprotected heights or hazardous machinery; limited to performing simple and routine tasks; and limited to judgment decisions and work place changes that are consistent with simple and routine tasks. PageID.39-47, 52-53. At step five, the ALJ concluded that there were jobs that existed in

significant numbers in the national economy that Plaintiff can perform, such as: a telephone solicitor (125,000 nationally), an escort vehicle driver (50,000 nationally), and a computer controlled color printer operator (38,000 nationally). PageID.52-53. Therefore, the ALJ held that Plaintiff was not disabled during the time period from his alleged onset date through his date last insured. PageID.54.

Plaintiff claims that the ALJ erred by: (1) concluding Plaintiff's disabilities did not meet or equal Listing 12.05c, as there is not sufficient evidence to support that finding; (2) limiting Plaintiff to "simple, routine repetitive tasks, and judgment decisions and changes with said tasks," as that description is impermissibly vague and does not account for Plaintiff's limitations; and (3) rejecting the opinion of Plaintiff's treating physician (Dr. Sarwat) without good reason. PageID.652. Upon review of the evidence of record, this Court affirms the ALJ's conclusions.

In regard to Plaintiff's first claim, she argues that the ALJ improperly ignored the medical evidence when she concluded that Plaintiff's disabilities did not meet or equal Listing 12.05C. PageID.652-653, 693-696. Listing 12.05C states in relevant part:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. "In essence, then, a claimant must make three

showings to satisfy Listing 12.05(C): (1) he experiences 'significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period' (i.e., the diagnostic description); (2) he has a 'valid verbal, performance, or full scale IQ of 60 through 70'; and (3) he suffers from 'a physical or other mental impairment imposing an additional and significant work-related limitation of function.'" *West v. Comm'r of Soc. Sec. Admin.*, 240 Fed. App'x 692, 697-98 (6th Cir. 2007) (citations omitted). It is Plaintiff's burden to "demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ evaluated Plaintiff's documents and evidence against the three requirements for Listing 12.05C:

> Lastly, the "paragraph C" criteria [under Listing 12.05] require[s] the presence of a valid verbal, performance, or full scale IQ score between 60 and 70 and another impairment, physical or mental, that imposing an additional and significant work-related limitation of function. Notwithstanding the fact that the record does include[] an IQ score between 60 and 70 and has multiple additional impairments that impose additional work-related limitations, the undersigned finds that the **claimant has not established that she has the required deficits in adaptive functioning to meet this Listing**. As set forth in 12.05, before any of the criteria in paragraphs A through D can be considered, the record must first establish that a claimant has "intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" (or the age of 22). The Diagnostic and Statistical Manual of Mental Disorders (4th Edition) states that there must be significant limitations in at least two of the following areas: communication, self-care, home living, social and interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. Based on this record, the undersigned finds that there is no evidence to support a finding that the claimant was limited in at least two of the listed areas on or before she turned 22 years old.

> Even if the undersigned finds that the claimant's report that she was enrolled in special education classes and did not complete high school as evidence of one deficit, the undersigned finds no evidence that she had other deficits when she turned 22 years old. Although the consultative examiner documented that the claimant had extreme deficit in her memory abilities (Exhibit 8F at 3), the record documents that she has been able to communicate with all of her treatment providers and the consultative examiner without any issues. She testified that she [was] able to carry out her personal care and grooming needs albeit with some alleged physical limitations. What is more, she has a driver's license; she raised three children including one with a severe disability (muscular dystrophy); and her wage records indicate that she worked at a substantially gainful level. Exhibits 3D, 4D. In sum, the undersigned finds no evidence that the claimant suffered from deficits in adaptive functioning before, or after, she turned 22 years old. For these reasons, the undersigned finds that the claimant does not meet listing 12.05.

PageID.38-39 (emphasis added). The ALJ's conclusion that Plaintiff does not meet the criteria under Listing 12.05C is supported by substantial evidence. *See cf.* PageID.695. The ALJ noted that the evidence supports two of the three prongs required to satisfy Listing 12.05C: that Plaintiff has an IQ between 60 and 70 (PageID.38), and that she has other severe physical or mental impairments (PageID.35, 38). However, the ALJ concluded that Plaintiff did not meet the first requirement under the Listing—deficits in adaptive functioning before the age of 22—based on Plaintiff's past work, daily activities, and history prior to age 22. PageID.38-39 (noting that Plaintiff's ability to perform work as a dishwasher for years shows that she was able to perform relatively complicated tasks); *see Foster*, 279 F.3d at 355. In fact, the only evidence of record supporting the idea that Plaintiff had deficits in adaptive functioning prior to age 22 was that she stated she dropped out of school after ninth grade and was enrolled in special education classes up until that point. PageID.38, 656; *see Foster*, 279 F.3d at 355 ("The only evidence in the record pertaining to this issue is that Foster left school after completing the ninth

grade, but why Foster did not continue her studies is unclear."). Plaintiff's special education classes, without more, are not sufficient to show that she had a deficit in adaptive functioning prior to age 22. *See Hayes v. Comm'r of Soc. Sec.*, 357 Fed. App'x 672, 677 (6th Cir. 2009) (noting that the court "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two.").

Despite the ALJ's thorough evaluation of Plaintiff's case against the listing requirements, Plaintiff challenges the ALJ's conclusion that she does not have a deficit in adaptive functioning under the listing. PageID.693-696; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. "Adaptive functioning includes a clamant's effectiveness in areas such as social skills, communication, and daily living skills." *West*, 240 Fed. App'x at 698 (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)); *see, e.g., Burrell v. Comm'r of Soc. Sec.*, 238 F.3d 419 (Table), 2000 WL 1827799, at *2 (6th Cir. Dec. 8, 2000) (affirming the ALJ's unfavorable conclusion that claimant did not have adaptive functioning deficits because he was "fairly active, maintain[ed] an interest in his household, and enjoy[ed] apparent satisfactory relationships with family members[,] . . .[and drove] and lift[ed] small weights with both arms."). Unless the claimant can "point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing," the ALJ has not committed reversible error. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. App'x 426, 432-433 (6th Cir. 2014).

Plaintiff points to Dr. Weber's medical opinion as evidence directly contradicting the ALJ's conclusion that she did not have sufficient deficits in adaptive functioning prior to age 22. PageID.656-658. Dr. Weber concluded that Plaintiff suffers from moderate anxiety disorder

(PageID.582), has a Global Assessment of Functioning (GAF) score of 50 (PageID.583), has moderate limitations when it comes to withstanding routine work stresses and adapting to changes at work, and has marked limitations in her ability to understand, carry out and remember simply instructions, and respond appropriately to co-workers and supervisors (PageID.584). *See generally* PageID.658-659. Notably, however, Plaintiff overlooks the fact that this medical evaluation took place in April of 2013, when Plaintiff was in her forties. PageID.578 (noting Plaintiff's date of birth as May 26, 1967); *see Foster*, 279 F.3d at 355 ("None of [claimant's] testing or evaluation was contemporaneous with her developmental period; she was already 42 years of age when the first testing was performed in 1997."). Therefore, Dr. Webers's report does not demonstrate that Plaintiff had deficits in adaptive functioning *prior* to age 22. *See West*, 240 Fed. App'x at 698.

Overall, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff did not meet the Listing requirement under 12.05C since she did not demonstrate that she had deficits in adaptive functioning before the age of 22. *See Hayes*, 357 Fed. App'x at 677 ("[Plaintiff] offers no other evidence [aside from her poor academic record] to establish onset before age twenty-two, and, without establishing this prong, she cannot equal Listing 12.05.") As a result, this claim fails. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("[T]hat there may be substantial evidence in the record to support another conclusion is irrelevant.").

For Plaintiff's second claim, she argues that the ALJ committed reversible error by failing to include Plaintiff's moderate limitations of concentration, persistence, and pace in her RFC finding. PageID.659. Specifically, Plaintiff claims that the ALJ accurately concluded at

Step Three that Plaintiff had moderate mental limitations in regard to concentration, persistence, and pace; however, Plaintiff claims that the ALJ's RFC finding (stating that Plaintiff was limited to "simple and routine tasks . . . [and] judgment decisions and work place changes that are consistent with simple and routine tasks") does not take into account Plaintiff's moderate mental limitations.  PageID.39, 659-661.

Plaintiff is correct in pointing out that the ALJ found that Plaintiff had moderate limitations in concentration, persistence, and pace at Step Three.  PageID.39.  However, Plaintiff fails to recognize that the ALJ's assessment of disorders at Steps Two and Three

> are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments.

SSR 96-8p.  As such, Step Three findings are not RFC assessments and therefore do not have to be explicitly reiterated in the RFC finding. *Id.*

Nonetheless, Plaintiff claims that the ALJ committed reversible error under *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), by including the vague limitation of "simple work" in her RFC finding.  However, Plaintiff's reliance on this case is misguided, as Plaintiff cites it for the proposition that an RFC finding that limits a claimant to "simple work" is legally deficient.  PageID.660-661; *see Ealy*, 594 F.3d at 516-17 (noting the ALJ found claimant to be limited to "[two-hour] segments over an eight-hour day [as long as] speed was not critical" earlier in the sequential evaluation, while the RFC stated that she was limited to "simple, repetitive tasks and instructions in non-public work settings.").  Instead, *Ealy*

stands for the "the long-held notion that if the ALJ relies on the response to a hypothetical question, such question must accurately portray the claimant's limitations and be consistent with the ALJ's express findings." *Hunt v. Comm'r of Soc. Sec.*, No, 1:13-CV-145, 2014 WL 345660, at *6 (W.D. Mich. Jan. 30, 2014) (providing a string cite of district court cases).  Consequently, this case is not on point.

Overall, Plaintiff has not demonstrated that the ALJ's RFC finding was deficient. *See Hunt*, 2014 WL 345660, at *6 (noting that a limitation to simple work is permissible where the ALJ concluded that the claimant had a moderate limitation in concentration, persistence, and pace).  In addition, the ALJ's RFC is supported by substantial evidence.  *See Jones*, 336 F.3d at 475 (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). Consequently, Plaintiff's claim that the ALJ's mental RFC finding was too vague to accurately reflect her abilities fails.

In regard to Plaintiff's final claim, she argues that the ALJ erred by affording little weight to Dr. Sarwat's (treating physician) and Dr. Sherrill's (one-time examiner) opinions without providing good reasons for doing so.  ECF No. 10 at 14; PageID.662.

Under the regulations, an ALJ must weigh all medical opinions regardless of its source.  20 C.F.R. § 1527(c).  The following factors should be considered when determining what weight to afford a medical opinion, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20

C.F.R. § 1527(c)).

In regard to a treating physician's opinion, the ALJ will only consider those factors if he or she decides to afford the treating physician's opinion little weight. An ALJ should afford a treating physician's opinion little weight when the evidence and findings are not consistent with the other substantial evidence of record. *See* 20 C.F.R. § 1527(c)(2). Moreover, when evaluating a treating physician's opinion, the ALJ should provide "good reasons" for the weight afforded to that opinion. *Id.* The "good reasons" must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, at *5. Failing to provide "good reasons for not crediting the opinion of a treating source, as § 1527(d)(2) requires," may lead to the case being remanded. *Wilson*, 378 F.3d at 545.

When evaluating Dr. Sarwat's medical opinion, the ALJ provided the following explanation to show her "good reasons" for not affording his opinion controlling weight:

> As for the opinion of Jabeen Sarwat MD, the claimant's treating primary care provider, the undersigned uses a two-step process in evaluating treating source opinions. The first step requires a determination on whether a treating physician's medical opinion is conclusive, i.e., is it to be accorded controlling weight. The opinion is given controlling weight when the treating physician's opinion is well-supported and is not inconsistent with other substantial evidence. If the opinion is deficient in either of these respects, it is not given controlling weight. The undersigned does not give controlling weight to Dr. Sarwat's opinion because it is neither well-supported nor supported by substantial evidence. In March 2014, Dr. Sarwat opined that the claimant could work at less than sedentary exertional level, as she could sit less than 2 hours in an 8 hour work day, among other limitations. Exhibit 9F at 1. Significantly, the undersigned could find only one appointment Dr. Sarwat had with the claimant.

> Exhibit 12F at 6 (November 2013). As described previously, at this appointment the claimant's [sic] complained of neck and shoulder pain and described having numbness and tingling off and on in her right arm and left leg. Id. What is more, the claimant reported that she could not stand for more than 5 hours, which suggests that she could stand less than 5 hours and is inconsistent with Dr. Sarwat's opinion that she could stand less than 2 hours. Exhibit 12F at 6. She also reported that with medications she is able to function at a 4 out of 10 pain level. Id. Significantly, Dr. Sarwat did not document any objective physical findings related to her musculoskeletal complaints, and therefore, the undersigned could not find any objective physical findings underlying and supporting Dr. Sarwat's opinion. Id. at 7. For these reasons, the undersigned finds that the [sic] Dr. Sarwat's opinion is not well-supported.
>
> At the second step, it must be determined how much weight the treating source's opinion is given, including whether the opinion is being rejected outright; sufficient reasons must be given for discounting the treating source's opinion. The undersigned gives little weight to Dr. Sarwat's opinion for several reasons. First, as described previously it appears that Dr. Sarwat has seen and treated the claimant once. Secondly, his underlying treatment notes do not support his opinion, as described previously. Third, Dr. Sarwat's opinion is inconsistent with other findings on the record and other opinions, such as Dr. Sherrill. Finally, Dr. Sarwat is a primary care provider and not a specialist in orthopedics or pain management and therefore lacks specialized knowledge and training in the field of neck, shoulder or back impairments. For these reasons, the undersigned gives little weight to Dr. Sarwat's opinion.

ECF No. 7-2 at 25-26; PageID.46-47. In affording Dr. Sarwat's opinion little weight, the ALJ provided four "good reasons" for doing so. *Id.*

Nonetheless, Plaintiff claims that the ALJ's "good reasons" for discrediting Dr. Sarwat's opinion are discredited by the record. Specifically, Plaintiff claims that: (1) the ALJ improperly noted that Dr. Sarwat only treated Plaintiff once, and (2) the ALJ improperly determined that the record did not support Dr. Sarwat's opinion. ECF No. 10 at 17-19; PageID.665-667.

In regard to Plaintiff's first argument, that the ALJ wrongly concluded that Dr. Sarwat saw Plaintiff only once, Plaintiff is correct in stating that she was seen by Dr. Sarwat on more than one occasion. *See* PageID.564, 567-568, 571, 588-589, 636-637.  However, this miscalculation does not render the ALJ's decision to afford Dr. Sarwat's opinion little weight invalid since the ALJ provided three other "good reasons" for not affording his opinion controlling weight: (1) "[Dr. Sarwat's] underlying treatment notes do not support his opinion," (2) "Dr. Sarwat's opinion is inconsistent with other findings on the record and other opinions, such as Dr. Sherrill," and (3) "Dr. Sarwat is a primary care provider and not a specialist in orthopedics or pain management and therefore lacks specialized knowledge and training in the field of neck, shoulder or back impairments." ECF No. 7-2 at 25-26; PageID.46-47.

In regard to Plaintiff's second argument (that Dr. Sarwat's opinions are supported by the record), this claim also fails.  The ALJ cited to inconsistencies between Dr. Sarwat's opinion and the evidence of record; for example, the ALJ noted, and the record supports, that Dr. Sarwat stated that Plaintiff could work at "less than [a] sedentary exertional level, as she could sit less than 2 hours in an 8 hour work day," and need to lie down unexpectedly every one to two hours. PageID.47 (citing PageID.588). However, Plaintiff stated that she could no more than five hours (implying that she could stand for less than five hours). PageID.47 (citing PageID.636). Clearly, the ALJ's conclusion that Dr. Sarwat's opinions are not supported by the record are supported by substantial evidence. *Jones*, 336 F.3d at 475 (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion).  As such, Plaintiff's claim that the ALJ improperly afforded little weight to Dr. Sarwat's opinion is denied.

Finally, Plaintiff states for her last claim that "[t]he ALJ failed to provide 'good/specific/supported' reasons for discounting . . . Dr. Sherrill's opinions." PageID.665. The ALJ concluded that portions of Dr. Sherrill's opinion should be afforded little weight due to the internal inconsistencies in Dr. Sherrill's opinions, but that the remainder of his opinion should be afforded "some weight" given its consistencies with the other objective findings of record:

> The undersigned gives partial weight to Dr. Sherrill's opinions, in large part because it does not entirely comport with his findings. Beginning with his physical opinion, Dr. Sherrill opined that the claimant could sit 6 hours in an 8 hour day, could stand 1 hour and walk 1 hour in an 8-hour day, she could grasp only 20 percent of the day and push, pull and finger 5 percent of the day respectively, she could frequently lift and carry 5 pounds, she could occasionally lift and carry 5 to 20 pounds, she could occasionally bend and never squat, crawl, climb and reach above shoulder level, she should avoid unprotected heights and have mild to moderate exposure to other hazards, and she may need to take unscheduled breaks. Exhibit 6F at 39-42. Dr. Sherrill also opined on the claimant's mental condition. He opined that the claimant had moderate limitations in her activities of daily living, social functioning, concentration, persistence or pace and moderate episodes of decompensation. Exhibit 6F at 37.
>
> The undersigned gives little weight to Dr. Sherrill's opinion regarding the claimant's manipulative limitations, her required rest breaks and her postural limitations. Dr. Sherrill's findings do support his opinions in these domains. For instance, as stated previously Dr. Sherrill documented that the claimant's grip strength in her biceps and triceps was equal and symmetric; the range of motion in her wrists and elbows was normal; and her grip was slightly diminished "but I am not sure [she] was giving maximal effort." Id. at 8. These finding[s] do not support an 80 percent limitation as suggested in Dr. Sherrill's opinion. Additionally, Dr. Sherrill's finding that the claimant had guarded but normal range of motion in her ankles, knees, and hips does not support his opinion that the claimant could occasionally bend and never squat, crawl, climb and reach above shoulder level. Although the undersigned believes that the claimant has limitations in reaching, the undersigned does not believe Dr. Sherrill's findings, or other objective findings in the record, support Dr. Sherrill's opinion that the claimant can never reach forward.

>  Indeed, one month after her appointment with Dr. Sherrill the claimant denied having any weakness numbness or tingling in her limbs, and reported that she spent her days doing household chores and taking her son to work. Exhibit 7F at 15.  What is more, there is nothing in the Dr. Sherrill's examination that supports the claimant's needs for unscheduled rest breaks, other than the claimant's subjective allegations.  The undersigned gives some weight to the remainder of Dr. Sherrill's opinion on the claimant's physical limitations because it is consistent with Dr. Sherrill's objective findings and consistent with other objective findings on the record, as described previously.
>
>  As for Dr. Sherrill's opinion on the claimant's mental limitations, the undersigned gives some but not great weight to his opinion. As a preliminary, there is no evidence Dr. Sherrill is a psychiatrist or specialized in mental health illness and treatment. Further, Dr. Sherrill documented limited observations of the claimant's mental condition: according to Dr. Sherrill the claimant talked through much fo the examination and her speech was small to moderately "pushed," but was clear and intelligible. Id. at 7-8.  While Dr. Sherrill's opinion is generally consistent with other mental status findings and evidence in the record, his underlying observations of the claimant's mental condition are scant. For these reasons, the undersigned give some but not great weight to Dr. Sherrill's opinion on the claimant's mental limitations.

ECF No. 7-2 at 22-23; PageID.43-44.

Notably, Plaintiff makes no argument in support of her claim that the ALJ did not provide good reasons for affording partial weight to Dr. Sherrill's opinion.  In fact, the only time Plaintiff mentions Dr. Sherrill's name again is when she states, "Since the Agency did not schedule a consultative examination, the ALJ's rejection of Dr. Jabeen *and Dr. Sherrill's* opinions led to the formulation of a RFC which was unsupported by any medical opinion." PageID.667 (emphasis added).  This statement appears to raise two new claims (that the ALJ's RFC finding is not supported by any medical evidence, and that the ALJ should have ordered a

consultative examination), instead of arguing or explaining Plaintiff's initial claim that the ALJ's decision to afford partial weight to Dr. Sherrill's opinion is improper. The Court is not inclined to make arguments for a party when the party fails to do so. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e decline to formulate arguments on [claimant's] behalf."); *Foster*, 279 F.3d at 353 (noting it is Plaintiff's burden to show she is disabled). Thus, this claim fails.

To the extent that Plaintiff claims the ALJ's RFC finding is not supported by any medical evidence, this claim also fails. An RFC determination is not the duty of a person's physicians; instead, this determination is exclusively within the purview of the Commissioner. *Id.* (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546). The ALJ is not required to base her RFC finding entirely on a physician's opinion because that "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 728 (6th Cir. 2013) (quoting SSR-96-5p). Rather, the ALJ may assess both medical and non-medical evidence before making an RFC determination. *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). Upon review of the medical and non-medical evidence on record, it is clear that there is substantial evidence to support the ALJ's RFC determination limiting Plaintiff to sedentary work. *See generally* PageID.39-47 (noting the ALJ gave significant weight to the opinions of State Agency doctors Mina Khorshidi and Janis Byrd, and State Agency Psychologist Kyla King, and that the ALJ also considered "the claimant's demonstrable activities" in making the RFC finding). Therefore, Plaintiff's claim that the ALJ

improperly made an RFC finding that is unsupported by the evidence of record fails.

Moreover, insofar as Plaintiff argues that the ALJ should have ordered a consultative examination, this argument also fails. An ALJ is never *required* to order a claimant to undergo an additional consultative examination.  Rather, the regulations clearly state that if there is insufficient evidence to determine if a claimant is disabled, then the ALJ "*may* ask you [the claimant] to undergo a consultative examination." 20 C.F.R. § 404.1520b(c)(1), (3).  Here, the ALJ did not abuse her discretion by deciding that there was sufficient evidence of record upon which to make an RFC finding, thereby making it unnecessary to require Plaintiff to undergo additional testing. *See Foster*, 279 F.3d at 355 (noting the ALJ has discretion to decide whether additional medical evidence is needed and will be paid for at the government's expense). As a result, this claim also fails.

Overall, based on the aforementioned analyses, Plaintiff's request to remand this case to the Social Security Administration pursuant to Sentence Four or Six of 42 U.S.C. § 405(g) is denied.  There is substantial evidence in the record that supports the Commissioner's decision that Plaintiff was not disabled as defined by the Social Security Administration.  In addition, Plaintiff has not provided new or previously unavailable evidence to support her claim. *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (noting that new evidence is that which did not exist or was unavailable at the time of the hearing).  In fact, Plaintiff makes no argument that she has new and material evidence for the courts to consider on remand.  Instead, Plaintiff argues that her previously admitted evidence was improperly considered by the ALJ.  Consequently, this Court concludes the Plaintiff has not met her burden to grant a reversal or remand in this case pursuant to Sentence Four or Six of 42 U.S.C. § 405(g).

Accordingly, the decision of the Commissioner is **AFFIRMED** and Plaintiff's request for relief is **DENIED**.

Dated: 4/7/2016

\_\_/s/ *Timothy P. Greeley*_____
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE